58 CCPA

### Application of Ulrich FINSTERWALDER.
### Patent Appeal No. 8425.

United States Court of Customs
and Patent Appeals.
Feb. 4, 1971.

Quarles, Herriott, Clemons, Teschner & Noelke, Milwaukee, Wis., attorneys of record, for appellant; Thomas O. Kloehn, Milwaukee, Wis., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and DURFEE, Judge, United States Court of Claims, sitting by designation.

LANE, Judge.

■ This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 20–24 in appellant's application serial No. 284,797, filed May 29, 1963, for "Prestressed Concrete Highway Formed in the Fashion of a Bridge." We affirm.

The appealed claims are drawn to apparatus used in the construction of bridges or elevated highways of the type wherein the roadway or carriageway is supported by one or more series of columns. The apparatus is said to be especially useful in the building of structures wherein the columns have top sections which cantilever out to form part of the roadway, as illustrated in appellant's Fig. 1 at 2, 2′ and 2″.

**FIG. 1**

[A3599]

Spans such as 3 and 3′ form the remainder of the roadway.

The construction apparatus claimed is illustrated in Figs. 6 and 7 of appellant's drawing.

**FIG. 6**

**FIG. 7**

INVENTOR
Ulrich FINSTERWALDER

[A3598]

As described in appellant's specification, at the stage of construction where two columns 1 and 1′ are complete, a box girder 19 having a length equal to twice the distance between the columns is placed on the columns as shown in Fig. 6. Column 1′ supports the girder through a trestle structure 25, while col-

umn 1 supports it through a gantry 21 which rides on rollers 22 on a track 23. To the extended end 34 of the girder may be attached equipment, such as derrick 35, for building the next column 1″ while concrete work on the connecting span 3 is underway.

At spaced intervals along the box girder 19 are several cross-bearers 20 which are rigidly fastened to the box girder so as to be movable therewith. These cross-bearers permit hanging of the form work for the concrete roadway sections, as shown in Fig. 7, which is a section through column 1′ at 90° to Fig. 6. The bottom portions 27 of the cross-bearers 20 form supports for the planking of working platforms 29.

When the concrete connecting span 3 and the next column 1″ have been completed, the entire apparatus may be moved forward and the previous operations repeated.

Claim 20, divided into clauses, is as follows:

Apparatus for constructing an elevated highway on a plurality of piers including columns disposed in a series at intervals, said apparatus comprising

a scaffold construction in the form of a torsionally rigid elongated box girder adapted to be mounted above the carriageway of an elevated highway or bridge to be constructed and a number of cross-bearers which extend out on both sides from said girder and are movable therewith,

trestle means adapted to be mounted on one of said piers and supporting said box girder thereon,

said girder having a length corresponding generally to the length of two bridge spans intermediate three piers,

said cross-bearers extending over a distance laterally on both sides of said girder, and having portions extending downwardly joined by supporting portions extending inwardly toward one another to generally encompass the cross-section of the highway being built,

and adjacent [sic] said supporting portions at least on one side of the girder being adapted to support a working platform.

Claim 21 adds the recitation of the gantry and rollers, as illustrated at 21 and 22 in Fig. 6. Claim 22 recites an additional trestle means under the projected end of the box girder, as shown at 25′ in Fig. 6. Claim 23 recites that the lower portions, 27 in Fig. 7, of the cross-bearers are spaced from each other to permit clearance for the bridge-supporting columns as the apparatus is moved, and that "said scaffold bearer," which we take to mean the box girder, is mounted on the gantry for movement therewith relative to the trestles. Claim 24 adds the recitation of a derrick at the projected end of the girder, as illustrated at 35 in Fig. 6.

All claims stand rejected under 35 U. S.C. § 103 as obvious over Suter.[1] We reproduce Figs. 1 and 3 of Suter.

A35881

1. U. S. Patent 3,003,219, October 10, 1961.

## Fig. 3

[A3587]

Suter discloses an I-beam track member 1 mounted on the roadway connecting two columns, 5 and 6, and having an end extending to and supported by a third column 7. In Figs. 1 and 3 the span between columns 5 and 6 has hardened and the apparatus is about to be moved forward for pouring the span between columns 6 and 7. The track member 1 supports a pair of C-shaped suspension frames 3 through mounting blocks 10 and wheels 11. The frames support form-carriers 2 which extend at least the distance between two columns. Suter states that the weight of the forms and concrete can be transferred to the cross-beams 15 on the columns by jacking the form-carriers 2 and suspension frames 3 prior to the concrete pour,

thereby lifting the frames off the track member, as shown in his Fig. 3. The track member 1 can thus be withdrawn and used elsewhere during curing and hardening of the concrete section.

The board found all the claims obvious in view of Suter, stating that Suter's track member 1 is equivalent to appellant's box girder and that Suter's suspension frames 3 are cross-bearers which could, if desired, be moved with the member 1. The board further found no patentable significance in any of the other features recited in the claims.

Appellant, after citing numerous cases for the principles of law involved in resolving an obviousness issue, contends that the following claim recitations represent the differences between the

claimed subject matter and the prior art (Suter):

1. a torsionally rigid box girder

2. a number of cross-bearers which extend out on both sides from said girder and are movable therewith

3. "adjacent [sic] said supporting portions at least on one side of said girder being adapted to support a working platform"

4. a gantry * * * rigidly secured to said girder to resist twisting movements

5. a derrick at said leading edge of said girder.

Prior to analyzing the significance of these limitations, it must be emphasized that appellant is *not* claiming here any particular *method* of construction, but rather he claims *apparatus* which may be used in any method of construction to which it is reasonably adaptable. Thus, the fact that appellant discloses the apparatus as advantageous in the "free cantilever" method of construction will not save the claims if the apparatus defined thereby would have been obvious to a person of ordinary skill in the bridge-construction art intending to use it in a somewhat different construction method.

We now consider the various claim limitations urged by appellant as rendering the claimed apparatus unobvious.

We find that the expression "torsionally rigid" does not distinguish at all from Suter, whose track member 1 is disclosed as a pair of I beams, preferably of steel. In Fig. 3 these I beams appear to be connected and strengthened by plates or blocks, although these are not numbered and are not discussed in the specification. We think such a structure would have a considerable degree of torsional rigidity and hence would meet the broad recitation "torsionally rigid" in appellant's claims. Our opinion is not changed on this point by the fact that Suter elsewhere discloses a hydraulic wheel-jack system under the track member to compensate "automatically for any major unevenness of the [roadway] over which the track member 1 travels."

We agree with appellant that Suter's track member 1 is not a box girder, but we think it would have been an obvious expedient to substitute a box girder for the Suter I-beams if greater strength were desired.

Appellant further contends, and perhaps this is his principal contention here, that the "claims on appeal clearly call for cross-bearers that are rigidly fastened to" the box girder so as "to cantilever laterally from" the box girder, and that such a structure is nowhere shown or suggested by the prior art. The claim limitations in question read: "a number of cross-bearers which extend out on both sides from said girder and are movable therewith." The board found that this language did not limit the claims to structures having cantilevering cross-bearers rigidly fastened to the girder, but that it would also read on Suter's suspension frames 3 (see Fig. 3, supra) which lie across and atop the central member 1. Appellant's contention is that the claim language excludes such top-lying members because of the words "extend out * * * from." We find this position unsound. The extending could, by the terms of the claim, be from the top as well as from the sides of the girder.

We further conclude that the expression "movable therewith" in no way implies a requirement of rigid fastening. Certainly the frames 3 of Suter are "movable with" the track member if such movement were desired.

■ Appellant contends that he did not freely choose the claim language in issue but was trapped into it by a wily examiner, and hence that we should give the language a narrower construction, in the light of the specification. If a wrong was done to appellant, the relief sought is not appropriate. We are not inclined to depart from our long-standing rule of giving all words in a claim their broadest reasonable interpretation consistent with the specification where

the patent has not yet issued and the applicant has an opportunity to change them. See In re Prater, 56 CCPA 1381, 415 F.2d 1393 (1969), and cases cited therein.

Appellant also urges significance in the recitation in claim 20 that the inwardly extending supporting portions of the cross-bearers are adapted to support a working platform at least on one side. Suter's specification states, with respect to one embodiment of the Suter apparatus, that the inwardly extending lower portions of the suspension frames "carry the twin beams of the form carrier * * * on which a platform * * * is mounted." While the details of such a platform are not shown or described by Suter, we think the Suter patent contains a clear suggestion to use the lower portions of the frames to support a working platform, as recited in claim 20.

Turning to the recitation in claim 21 of a

gantry at one end of said girder disposed transversely of and below said girder and rigidly secured to said girder to resist twisting movements, and running rollers supporting said gantry

we note that, as described in appellant's specification, "the gantry 21 is a steel construction which can be of the solid or lattice kind and which takes up twisting moments caused by one-sided stressing of the scaffold girder 19." We fail to see how the gantry would be any different in function and effect from the counterweight 18 and truck 21, shown respectively in Suter's Figs. 1 and 3.

As for the derrick at the leading end of the girder, as recited in claim 24, while not shown by Suter, we believe it would have been obvious to utilize such a well-known construction device wherever needed on an overhead structure, and hence we agree with the board's conclusion that that feature does not render the claim unobvious.

The decision of the board is affirmed.

Affirmed.